**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **FAYE C. PAINTER SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: 5:04-0608** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's Application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings. The Court has also considered Plaintiff's Reply Brief.

The Plaintiff, Faye C. Painter Smith (hereinafter referred to as "Claimant"), filed an application for DIB on May 31, 2001 (protective filing date), alleging disability as of June 15, 1999, due to ruptured discs, constant low back pain and right leg pain, bowel trouble, difficulty sleeping, and problems with nerves.  (Tr. at 84-87, 62, 69.) The claim was denied initially and upon reconsideration.  (Tr. at 62-66, 69-71.)  On March 8, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ).  (Tr. at 72.)  A hearing was held on November 4, 2002, before the Honorable Richard J. Maddigan, but was continued to allow time for the receipt of additional medical evidence and to allow Claimant to undergo consultative evaluations. (Tr. at 282-88.)  A supplemental

hearing was then held on July 23, 2003. (Tr. at 289-306.)  By Decision dated August 19, 2003, the

ALJ determined that Claimant was not entitled to benefits.  (Tr. at 17-29.)  The ALJ's Decision

became the final decision of the Commissioner on May 28, 2004, when the Appeals Council denied

Claimant's request for review.  (Tr. at 6-8.)  On June 17, 2004, Claimant brought the present action

seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.

See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability

to engage in any substantial gainful activity by reason of any medically determinable impairment

which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims.  20 C.F.R. § 404.1520 (2004).  If an individual is found "not disabled" at any step,

further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether

a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant

is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).

If a severe impairment is present, the third inquiry is whether such impairment meets or equals any

of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id.

§ 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the

fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.

20 C.F.R. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of

disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the

Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and

final inquiry: whether the claimant is able to perform other forms of substantial gainful activity,

2

considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 21.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of lumbar disc rupture at L4-5, depressive disorder, and panic disorder. (Tr. at 23.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23.) The ALJ then found that Claimant had a residual functional capacity for light work with additional limitations, including a sit/stand option, only occasional performance of postural activities, avoidance of hazardous machinery and vibrations, requires low stress unskilled work, and limited contact with the public. (Tr. at 26.) As a result, the ALJ determined that Claimant was unable to return to her past relevant work. (Tr. at 26.) Nonetheless, the ALJ determined that Claimant could perform such light jobs as assembler, manufacturer, grader/sorter, and sedentary jobs such as assembler, and quality control, which existed in significant numbers in the regional and national economy. (Tr. at 27.) On this basis, benefits were denied. (Tr. at 27-29.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular

> conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on February 12, 1961, and was 42 years old at the time of the supplemental administrative hearing. (Tr. at 85, 291.) Claimant has a high school education and completed vocational training to become a certified nurse assistant. (Tr. at 101.) In the past, she worked as a certified nurse assistant, sales clerk, and laundry worker. (Tr. at 96.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts numerous challenges to the Commissioner's decision. She asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to properly develop the record; (2) the reports of Disability Determination Service physicians did not constitute substantial evidence to support the ALJ's decision; (3) the ALJ erred in considering the

opinion and assessment of Sunny S. Bell, consultative examiner; (4) the ALJ erred in failing to consider Claimant's impairments in combination and in failing to use a Medical Expert to testify at the administrative hearing; (5) the Appeals Council failed to properly consider evidence submitted after the ALJ's decision; (6) the ALJ erred in submitting an improper hypothetical question to the VE; (7) the ALJ erred in assessing Claimant's pain and credibility; and (8) the ALJ improperly disregarded the opinion of Claimant's treating physician, Dr. Ashby.  The Commissioner asserts that these arguments are without merit and that the decision is supported by substantial evidence.[1]

1.  Duty to Develop the Record

Claimant first argues that the ALJ failed to properly develop the record with regard to her impairments.  She argues that both the ALJ and her then counsel failed to question her at the administrative hearing regarding the effects of her impairments on her day-to-day life and activities. She also asserts that the ALJ erred in failing to secure an additional psychological consultative evaluation.  The Commissioner asserts that this argument is without merit.

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence."  Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate."  Id.  The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis

---

[1]  In her Reply, Claimant asserts that the Commissioner barely responds to her arguments. The Court notes that Claimant (after being granted permission by the Court) filed a 37-page Memorandum raising eight arguments for the Commissioner and the Court to address.  It appears that the Commissioner sufficiently addressed Claimant's numerous arguments but apparently attempted to address them within the 20 page limit set forth in the Local Rules of Procedure, rather than filing a lengthy brief.

claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence.  Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 404.1512(a) (2004).  Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment.  Id. § 404.1512©).  In Bowen v. Yuckert, the United States Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary.  . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As the Commissioner asserts, the ALJ did not err or fail to develop the record.  First, the ALJ did not err in determining not to order an *additional* consultative psychological evaluation in the instant case.  Such determination is left to the ALJ's discretion and considers the existing medical evidence and a claimant's allegations.  See 20 C.F.R. § 404.1519a(a)(1).  In this case, the ALJ initially convened an administrative hearing in November 2002 but continued the hearing to allow for consultative examinations. (Tr. at 282-88.)  Claimant was then examined by Sunny S. Bell, licensed psychologist, in December 2002, and this report was placed in the record. (Tr. at 230-38.)  Following the development of further evidence, the ALJ held a supplemental hearing at which Claimant and a Vocational Expert testified. (Tr. at 289-306.)

Additionally, as the Commissioner notes, Claimant was represented by counsel throughout

the entire administrative process.[2] (Tr. at 56-58.) Regarding her impairments and their effects upon her activities and ability to work, Claimant completed numerous questionnaires which are in the record. Additionally, the record contains medical records, records from consultative examinations, and evaluations by state agency physicians who reviewed the record and gave an opinion on Claimant's ability to work. In October 2002 and July 2003, Claimant was notified of her right to submit additional evidence and request a subpoena for documents or testimony. (Tr. at 32-35, 48-51.) At the supplemental hearing, Claimant's attorney was given the opportunity to question and did question the Vocational Expert. (Tr. at 304-06.) In light of Claimant's representation by counsel and the fact that the ALJ continued the proceedings once to allow for additional evidence, the undersigned finds that the ALJ did not fail to properly develop the record in this case.

2.  Reports of State Agency Reviewing Physicians

Claimant next asserts that the assessments of state agency physicians who reviewed the record and provided opinions regarding Claimant's abilities are not substantial evidence and that the ALJ erred in relying heavily upon them. The Commissioner has not responded specifically to this argument.

Several state agency physicians reviewed the record in the instant case and gave opinions regarding Claimant's mental and physical residual functional capacity (RFC). (Tr. at 154-62, 192-213.) Dr. MacCallum opined in August 2001 that Claimant could perform light work with additional limitations, an RFC essentially adopted by the ALJ. (Tr. at 154-62.) Likewise, Dr. Gomez made a similar RFC determination in January 2002. (Tr. at 205-13.) In criticizing the assessments, Claimant argues that the state agency physicians did not have the benefit of some of the later-

---

[2]  Claimant has different counsel in this appeal.

included medical evidence.  Claimant points to the January 2003 report of Dr. Bhirud as one piece of evidence that the state agency physicians did not have.  She fails to note, however, that Dr. Bhirud also determined that Claimant retained the RFC for light work with additional limitations, including only occasional performance of postural activities. (Tr. at 244-45.) The ALJ actually further limited Claimant by requiring a sit/stand option. (Tr. at 26.)  Thus, the state agency physicians' opinions are supported by Dr. Bhirud's opinion.

With regard to Claimant's mental impairments, Dr. Smith reviewed the record in January 2002 and opined that Claimant had severe mental impairments, but that the impairments were not expected to last for 12 months. (Tr. at 192-204.)  Dr. Smith assessed Claimant's degree of limitation in the four broad areas of functioning and determined that she had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation of extended duration. (Tr. at 200.)  Contrary to Claimant's arguments, the ALJ did not rely "heavily" upon this assessment.  The ALJ determined that Claimant's depressive disorder and panic disorder were severe impairments.  (Tr. at 23.)  In assessing Claimant's degree of limitation in the relevant areas of functioning, the ALJ determined that she had mild restriction of activities of daily living; **moderate** difficulties in maintaining social functioning; **moderate** difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation of extended duration. (Tr. at 23-24.)  The ALJ cited to evidence in the record in support of his determination. (Tr. at 23-24.)

The Regulations provide that state agency medical and psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation"

whose opinions must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(I) (2004). Although the ALJ considered these assessments, he did not give controlling weight to them and provided sufficient explanation for the weight afforded them, if any.  With regard to the physical RFC assessments of Dr. MacCallum and Dr. Gomez, the ALJ noted that he concurred with the assessments but found that the evidence supported "additional non-exertional limitations not indicated by the state agency physicians." (Tr. at 26.)  He therefore limited Claimant further than the state agency physicians. Additionally, as previously noted, the ALJ did not rely heavily upon Dr. Smith's mental RFC assessments, as he found Claimant more limited in this regard.  Further, Claimant fails to show how the later-acquired evidence would have changed these assessments or would have changed the ALJ's RFC determination.

Claimant further argues that none of the assessments attempt to express an opinion on whether the physical and mental impairments combined meet or equal a listed impairment.  The state agency physicians are either mental experts or physical experts and therefore do not assess the physical and mental impairments in combination.  Rather, the ALJ assesses the impairments in combination and Claimant's argument regarding the ALJ's assessment of such is addressed elsewhere in this Proposed Findings and Recommendation.  Accordingly, Claimant's argument is clearly without merit.

3. and 8.  <u>Examining and Treating Physicians' Opinions</u>

The undersigned combines Claimant's third and eighth arguments regarding the ALJ's treatment of her examining and treating physicians' opinions.  Claimant argues that the ALJ erred in failing to give appropriate weight to the opinions of Ms. Bell, an examining source, and Dr. Ashby, her treating physician.  The Commissioner asserts that these arguments are without merit.

9

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 404.1527(d).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner.  Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  Section 404.1527(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).  The Regulations add that because nonexamining sources have no examining or treating relationship with claimant's, the weight given their opinions depends upon "the degree to which they provide supporting explanations for their opinions." Id. § 404.1527(d)(3).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a

detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(d)(2) (2004).  Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2004).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2004).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).    If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.

*Ms. Bell*

Claimant first argues that the ALJ erred in evaluating the opinion and report of Sunny S. Bell, licensed psychologist.  Ms. Bell evaluated Claimant on December 6, 2002, following the first administrative hearing before the ALJ. (Tr. at 230-38.)  Ms. Bell noted that rapport was easily established and Claimant  was generally pleasant and cooperative. (Tr. at 230.)  Claimant reported panic attacks and noted that she had never been in psychiatric treatment. (Tr. at 231.)  Claimant was oriented and her mood was anxious and depressed. (Tr. at 233.)  Ms. Bell noted that judgment was mildly deficient; immediate, recent, and remote memory skills were within normal limits; concentration, persistence, and pace were within normal limits; and Claimant reported some daily

11

activities and social activities. (Tr. at 233-35.) Diagnoses were panic disorder with agoraphobia and depressive disorder not otherwise specified. (Tr. at 234.) Ms. Bell completed a form Medical Assessment of Ability to Do Work-Related Activities (Mental) regarding Claimant and opined that she had a "good" ability (more than satisfactory) to follow work rules; maintain attention/concentration; understand, remember, and carry out simple job instructions; and maintain personal appearance. (Tr. at 236-37.) She had a "fair" ability (limited but satisfactory) to relate to co-workers; interact with supervisors; use judgment; and understand, remember, and carry out detailed, but not complex job instructions. (Tr. at 236-37.) Ms. Bell opined that Claimant had a "poor" ability (seriously limited but not precluded) to deal with the public; deal with work stresses; function independently; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. (Tr. at 236-37.)

The ALJ considered and summarized Ms. Bell's opinion and report of examination. (Tr. at 23.) The ALJ afforded the opinion little weight for several reasons. (Tr. at 25.) The ALJ was obviously aware that Ms. Bell's report was based upon a one-time evaluation, and the report makes clear that she is a licensed psychologist. (Tr. at 235.) Additionally, the ALJ noted that the opinion regarding Claimant's mental residual functional capacity (RFC) was likely based on Claimant's subjective complaints. (Tr. at 25.) He also found that the form was inconsistent with the treatment notes of Claimant's treating physician, Dr. Ashby, and not fully supported by the medical evidence of record. (Tr. at 25.)

As previously noted, Ms. Bell's findings throughout the examination were essentially normal. (Tr. at 233-35.) The ALJ noted that Claimant was independent in the conduct of her daily

12

activities, which included preparing meals, performing light housework, and doing laundry. (Tr. at 23, 118-23, 130-33, 230-32, 234-35.)  The ALJ noted that Claimant spends her days taking care of her three-year old daughter. (Tr. at 24.)  He noted that she reported no concentration problems and stated that her prescribed medications for her psychiatric problems were helping. (Tr. at 25.)  In December 2001, Dr. Ashby noted that Claimant was taking Wellbutrin for panic attacks and that "she was controlled on one dose a day." (Tr. at 229.)  The treatment note also states that Claimant had a couple of times where she was "on the verge of a panic attack but was able to talk herself out of it." (Tr. at 229.)  Later treatment notes from Claimant's counseling sessions do not specifically support Ms. Bell's assessment.  A May 2003 treatment note indicates that Claimant was giving herself credit for avoiding panic attacks. (Tr. at 258.)

Claimant argues that there is no inconsistency between Ms. Bell's report and the treatment notes of Dr. Ashby and says that the ALJ "failed to point to any such inconsistency." (Pl.'s Br. at 24.)  Claimant, however, fails to point out how Dr. Ashby's treatment notes support her position of disability.  Notably, there is no mental RFC assessment from Dr. Ashby.  Although Claimant may be unhappy with the ALJ's determination to give little weight to Ms. Bell's assessment, it is clear that he properly evaluated the opinion pursuant to the applicable law and Regulations and considered the appropriate factors.   Accordingly, the undersigned finds that the ALJ properly evaluated Ms. Bell's medical opinion.

*Dr. Ashby*

In her last argument, Claimant asserts that the ALJ improperly disregarded the opinion of Dr. Ashby, Claimant's treating physician. (Pl.'s Br. at 34.)  Claimant mentions both Dr. Ashby's treatment records which were in the record at the time of the ALJ decision, as well as a statement

made by Dr. Ashby after the date of the ALJ decision in which Dr. Ashby stated that Claimant was totally disabled. (Tr. at 256.)

As previously noted, Dr. Ashby's treatment records contain no RFC assessment or opinion that Claimant is totally disabled.  The ALJ considered all of the medical evidence, including the treatment notes of Dr. Ashby, but Dr. Ashby did not submit an opinion regarding Claimant's abilities or limitations which the ALJ could assess.  With regard to Dr. Ashby's February 5, 2004, opinion on a West Virginia Department of Health and Human Services form, this opinion was not submitted to the ALJ and he therefore could not have erred in failing to consider it. (Tr. at 256.)  The Appeals Council specifically incorporated this evidence into the administrative record, and as a result, the Court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

In the February 5, 2004, form letter, Dr. Ashby states that Claimant suffers from low back pain with difficulty lifting and bending, and anxiety, which causes difficulty with crowds or stressful work situations. (Tr. at 256.) Dr. Ashby noted that the incapacity would be for life, yet noted that Claimant would be able to participate in educational activities/vocational training. (Tr. at 256.) First, Dr. Ashby's statement is essentially a statement that Claimant is completely unable to work and is therefore not entitled to special significance even though it is an opinion of a treating source.  See 20 C.F.R. § 404.1527(e)(1)-(3); 416.927(e)(1)-(3) (2004) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance).  Dr. Ashby's statement contains no objective medical findings to support the conclusion.  Additionally, Dr.

14

Ashby's opinion is inconsistent, as it states that Claimant is unable to work but that she could participate in educational or vocational training. (Tr. at 256.)

As previously noted, the opinion is inconsistent with Claimant's reported daily activities and the other evidence of record, including the opinions of state agency medical consultants who opined that Claimant could perform light work with additional limitations. (Tr. at 154-61, 205-13.)  On consultative examination in December 2002, Dr. Crow found that Claimant had small disc herniation at the L4-5 level, had 5/5 muscle strength symmetrically in both the upper and lower extremities[3], intact sensation, and normal gait. (Tr. at 225-26.)  Dr. Crow recommended conservative treatment for the back and leg symptoms with "physical therapy followed by pain clinic evaluation and management as needed." (Tr. at 226.)  In January 2003, Dr. Bhirud performed a consultative physical examination and found that Claimant had a normal gait and could squat and walk on her heels and toes. (Tr. at 240.)  She had normal range of motion in the lumbar and cervical spine, mild lumbar tenderness, negative straight leg raising bilaterally, normal joints, and no neurologic deficits in the lower extremities. (Tr. at 240-41.)  Dr. Ashby's statement insofar as it concerns Claimant's mental health is also inconsistent with the February 2004 report of Dr. Penders, who assessed Claimant's GAF at 75.[4] (Tr. at 274-75.)  A GAF of 75 is clearly inconsistent with a finding of mental

---

[3]  Muscle strength is sometimes assessed on a scale of 0 to 5, with 0 indicating no movement, 1 indicating trace movement, 2 indicating movement with the aid of gravity, 3 indicating movement against gravity but not resistance, 4 indicating movement against resistance supplied by the examiner, and 5 indicating normal strength. The Merck Manual of Diagnosis and Therapy 1347 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

[4]

The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).  American Psychiatric

disability.  Based upon the inconsistencies among this statement and the remaining evidence of

record, the ALJ's decision is supported by substantial evidence, even considering Dr. Ashby's

February 2004 statement of disability.

4.  <u>Failure to Consider Impairments in Combination and Failure to Call a Medical Expert</u>

Claimant next argues that the ALJ failed to consider her impairments in combination and

failed to call a medical expert to provide expert testimony regarding the combination of

impairments. The Commissioner asserts that this argument is without merit.

The Social Security Regulations provide that:

In determining whether your physical or mental impairment or impairments are of
a sufficient medical severity that such impairment or impairments could be the basis
of eligibility under the law, we will consider the combined effect of all of your
impairments without regard to whether any such impairment, if considered
separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2004).  Where there is a combination of impairments, the issue "is not only

the existence of the problems, but also the degree of their severity, and whether, together, they

impaired the claimant's ability to engage in substantial gainful activity." <u>Oppenheim v. Finch</u>, 495

F.2d 396, 398 (4th Cir. 1974).  The ailments should not be fractionalized and considered in isolation,

but considered in combination to determine the impact on the ability of the claimant to engage in

substantial gainful activity.  <u>Id.</u>  The cumulative or synergistic effect that the various impairments

have on claimant's ability to work must be analyzed.  <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th

Cir. 1983.)

A review of the ALJ's decision in the instant case shows that Claimant's argument is without

Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> ("DSM-IV") 32 (4th ed.
1994).

merit. The ALJ specifically noted the requirements of the Regulations with regard to considering impairments in combination. (Tr. at 21.) The ALJ first determined that Claimant had both non-severe and severe impairments. (Tr. at 22-23.)  Claimant fails to point to any evidence of record or show how the ALJ failed to consider the impairments in combination.  The ALJ considered all of the evidence and summarized it in his decision.  In determining Claimant's RFC, the ALJ found that she should be limited to light work with a sit/stand option and only occasional performance of postural activities, as well as requiring low-stress, unskilled work with limited contact with the public. (Tr. at 26.)  The ALJ therefore considered both her physical and mental limitations.

The Claimant focuses on arguing that the ALJ should have called a Medical Expert to testify regarding the combined effect of her impairments.  As the Commissioner notes, state agency consultants reviewed the record at the initial and reconsideration stages of review and determined that Claimant's impairments did not equal a listed impairment. (Tr. at 59, 61.)  The Regulations provide that state agency medical and psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose opinions must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(I) (2004).  Thus, medical experts have reviewed Claimant's impairments and concluded that they do not meet or equal a listing.  The Regulations provide that ALJs "*may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s)  equals the requirements of any impairment listed in appendix 1 . . . ." 20 C.F.R. § 404.1527(f)(2)(iii) (2004) (emphasis added). In the instant case the ALJ had medical evidence from treating and examining physicians and then referred Claimant for consultative evaluations before holding the administrative hearing.  Claimant fails to assert what listed impairments she believes that she may meet or equal.

17

The ALJ fully considered the evidence of record and did not err in determining, within his discretion, not to call a Medical Expert.  Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence.

5.  Appeals Council's Consideration of Evidence

Claimant argues that the Appeals Council failed to properly consider the additional evidence it received and should have remanded the case based upon this evidence.  The Commissioner asserts that this argument is without merit.

Considering evidence which Claimant submitted to the Appeals Council and the Appeals Council included in the record, the Fourth Circuit concluded in Wilkins v. Secretary, Dept. of Health and Human Serv., 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*), that Courts reviewing decisions of the Social Security Administration must consider "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Thus, reviewing Courts must consider new evidence which the claimant submits while the decision of the Appeals Council is pending even when the Appeals Council denies the claimant's request for review. See also Adkins v. Barnhart, 2003 WL 21105103, * 5 (S.D. W.Va.)(Stanley, M.J.)

Claimant submitted to the Appeals Council several pages of additional evidence in late 2003 and early 2004. (Tr. at 255-81.)  The first piece of evidence submitted is the February 2004 statement of Dr. Ashby written on a West Virginia Department of Health and Human Services form. (Tr. at 256.)  This is the statement previously discussed by the undersigned in which Dr. Ashby states that Claimant is totally disabled due to her impairments. (Tr. at 256.)  Much of the other

18

evidence consists of counseling treatment notes from New River Health Association dated March 20, 2003 to May 7, 2003 and additional records from visits with Dr. Ashby. (Tr. at 257-72, 278-81.) Additionally, the evidence submitted to the Appeals Council contains an Intake Evaluation from FMRS completed by Dr. Penders, psychiatrist. (Tr. at 274-75.)

The record shows that this evidence was submitted to the Appeals Council and was made a part of the record that is currently before the Court. (Tr. at 4.) The Appeals Council's May 28, 2004 decision concluded that there was no basis for granting Claimant's request for review of the ALJ's decision. (Tr. at 5-9.) In deciding whether to grant review, the Appeals Council "must  consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and ©) relates to the period on or before the date of the ALJ's decision.'" Wilkins, 953 F.2d at 95-96 (citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.     The Appeals Council specifically incorporated this evidence into the administrative record.  As a result, the court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

Claimant fails to point out for the Court how this evidence would warrant remand.  Rather, she asserts merely that the Appeals Council never analyzed the evidence, which included the treating physician's opinion of disability and "much information regarding the panic attacks . . . ." (Pl.'s Br. at 27-28.)  Accordingly, the undersigned finds that only a very brief review and discussion of the evidence is warranted in light of Claimant's efforts.  First, with regard to the February 2004 statement of Dr. Ashby, the undersigned has already considered and evaluated this evidence

19

previously in this Proposed Findings and Recommendation and concluded that it would not provide a basis for changing the ALJ's decision. Therefore, no further discussion of this evidence is warranted.

The remainder of the evidence would likewise not change the outcome of the ALJ's decision. The counseling treatment notes provide nothing in the way of new evidence regarding Claimant's panic attacks. As previously noted, the counselor indicated in May 2003, following several sessions, that Claimant had been successful at avoiding panic attacks and was able to talk herself out of them. (Tr. at 258.) The intake evaluation dated February 16, 2004 and completed by Dr. Penders indicates that Claimant has panic disorder, but has a GAF of 75, which as previously noted, indicates only slight impairment in functioning. (Tr. at 274.) See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994). There is no indication of disability due to panic attacks. Additionally, the treatment notes from Dr. Ashby provide nothing new; Claimant was seen for a variety of ailments, and appeared in no distress. (Tr. at 278-81.)

The evidence submitted is not material, in that it would not have changed the ALJ's decision. Thus, even if it related to the period on or before the date of the ALJ's decision, it did not need to be considered by the Appeals Council. See Wilkins, 953 F.2d at 96-97; Perkins v. Chater, 107 F.3d 1290, 1294 (7th Cir. 1997). Nonetheless, the Appeals Council considered the evidence and found no basis, after considering the entire record, on which to disturb the ALJ's decision. (Tr. at 8-9.) This finding was proper and the undersigned finds that, considering the entire record, including the new evidence, the Commissioner's decision is supported by substantial evidence.

The ALJ properly considered the evidence of record and adopted an RFC which was consistent with the evidence, specifically, that Claimant could perform light work with additional

20

limitations.  The ALJ even accounted somewhat for Claimant's pain and her mental impairments in the RFC.  Accordingly, the ALJ's decision is supported by substantial evidence and remains such even considering the new evidence submitted to the Appeals Council. Neither reversal nor remand of the Commissioner's decision is warranted.

6.  Hypothetical Question to the Vocational Expert (VE)

Claimant next argues that the ALJ erred in submitting an improper hypothetical question to the VE at the administrative hearing.  Claimant asserts that the ALJ ignored the issue of panic attacks and their frequency in submitting the hypothetical question.  She asserts that when her counsel asked a hypothetical question including the limitations assessed by Sunny Bell, the VE responded that there would be no jobs such a person could perform.  The Commissioner asserts that Claimant's argument is without merit.

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments.  Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989).  "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity."  Id. at 51, see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993) (stating that "in questioning a vocational expert in a social security disability hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the Claimant's impairments."). A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.  See

21

Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also Pickney v. Chater, 96 F.3d 294, 296-7 (8th Cir. 1996) (holding that "a hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies"); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (stating that "An ALJ must propose a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record that reflects each of the Claimant's limitations."). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983). If a Claimant's complaints are not credible, the hypothetical question posed to the vocational expert should contain no reference to them. See Jones v. Bowen, 841 F.2d 849, 851 (4th Cir. 1988.)

Although arguing that the ALJ should have included more significant limitations from her panic attacks in the hypothetical question submitted to the VE, the Claimant takes no issue with the ALJ's findings regarding the severity of her mental impairment and/or his ratings of the degree of limitation in the relevant areas of functioning. (Tr. at 23-24.)  The ALJ determined that although Claimant's depressive and panic disorders were severe impairments, she had only mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and experienced no episodes of decompensation of extended duration. (Tr. at 23-24.)  Claimant argues that the ALJ should have included the frequency of her panic attacks, but does not explain her argument or state specifically what limitation the ALJ should have included. Based upon his rating of Claimant's degree of limitation in the requisite areas of functioning, the ALJ included in the hypothetical question to the VE that the person would require low stress, unskilled work and limited contact with the public. (Tr.

at 302.)   The VE responded that there were a significant number of jobs that a person with Claimant's age, education, vocational background and RFC could perform. (Tr. at 302.)   To the extent that Claimant argues that the limitations assessed by Ms. Bell should have been included in the hypothetical question, the undersigned has already upheld the ALJ's determination to afford little weight to Ms. Bell's assessment, and therefore it was proper for those limitations to not be included in the hypothetical question, as they were not supported by the record.   Additionally, to the extent that Claimant appears to argue that her subjective complaints regarding her condition and her panic attacks should have been accepted and incorporated into the hypothetical, the undersigned finds and explains below that the ALJ properly found Claimant not entirely credible.   Accordingly, the hypothetical question submitted to the VE was proper as it included the limitations which were supported by the record.   Claimant's argument is therefore without merit.

7.   <u>Pain and Credibility Assessment</u>

Claimant argues that the ALJ erred in assessing her pain and credibility. The Commissioner asserts that this argument is without merit.

A two-step process is used to determine whether a claimant is disabled by pain.   First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.   20 C.F.R. § 404.1529(b) (2004); SSR 96-7p; <u>see also</u> <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).   If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.   <u>Craig</u>, 76 F.3d at 595.   When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be

23

proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).

Objective medical evidence of pain should be gathered and considered, but the absence of such

evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's

symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged

functional limitations are reasonably consistent with objective medical and other evidence. 20

C.F.R. § 404.1529(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons. . . . Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other
> > symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you
> > take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief
> > of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other
> > symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour,
> > sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due
> > to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically
> determinable physical or mental impairment(s)--i.e., an impairment(s) that can be

24

shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or]

25

redness" to corroborate the extent of the pain.  Id. at 595.  Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.  The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

At the threshold determination, the ALJ stated that "[r]esolving doubts in the claimant's favor, the undersigned finds that the claimant has produced evidence of an impairment that could reasonably be expected to cause the alleged symptoms." (Tr. at 24.)  The ALJ thus proceeded to the second step of the analysis and analyzed the intensity and persistence of Claimant's pain and other symptoms.  In his decision, the ALJ specifically listed the factors to be considered in assessing the intensity and persistence of pain and other symptoms. (Tr. at 24.)

In the second step of the analysis, the ALJ noted the nature and location of Claimant's pain, which included aching pain in her lower back, right leg, and buttocks, which also caused nausea. (Tr. at 24-25.)  The ALJ noted Claimant's reports that her pain caused sleep disturbance and that she dropped things when lifting. (Tr. at 25, 116.)  In evaluating aggravating and precipitating factors, the ALJ noted Claimant's reports that cold weather and performing prolonged tasks and housework aggravated her pain. (Tr. at 25.)  The ALJ noted that Claimant took psychiatric medications which she stated caused her to feel "not normal." (Tr. at 25.)  He noted that Claimant reported taking hot baths twice a day to relieve back pain. (Tr. at 25.)  With regard to usual activities, the ALJ noted that Claimant spent her days taking care of her three-year old daughter and doing some household chores. (Tr. at 24, 118-23.)  He noted that she reported doing laundry, vacuuming, mopping, and shopping, watching television, and reading newspapers. (Tr. at 24, 118-23.)  Despite Claimant's

26

argument that the ALJ merely paid "lip service" to the process for evaluating credibility, it appears that the ALJ properly considered the requisite factors and set forth the evidence quite clearly in the decision.

The ALJ also reviewed the evidence of record, which supports his decision to find Claimant not entirely credible and to limit her to light work with a sit/stand option and other limitations. The ALJ noted that Claimant reported severe back problems to Dr. Ashby but had no numbness or weakness in the back. (Tr. at 25, 178.) He noted that in December 2001 Claimant's physical therapist stated that she had no evidence of sensory deficit to light touch. (Tr. at 25, 185.) Claimant also had negative straight leg raising and satisfactory back and abdominal strength. (Tr. at 185.) The ALJ noted Dr. Crow's findings on physical examination that Claimant had normal muscle strength in the upper and lower extremities; intact sensation; and normal range of motion in the cervical and lumbar spine. (Tr. at 25, 225-26.) Claimant had rated her pain as a 6 on a scale of 1-10, with 10 being the worst possible pain. (Tr. at 25, 224.) Dr. Crow recommended conservative treatment. (Tr. at 226.) He further noted that upon examination with Dr. Bhirud, Claimant could walk in tandem gait and did not require an ambulatory aid. (Tr. at 25, 239-41.) She was able to heel walk, toe walk and squat, straight leg raising was negative, and forward flexion was 90 degrees. (Tr. at 25, 239-41.) She had no neurological deficits in the lower extremities. (Tr. at 25, 241.) Dr. Bhirud also determined that Claimant could perform light work with additional limitations. (Tr. at 244-45.) The ALJ also noted that Claimant did not seek treatment for her back pain until 2000, which further diminished her credibility. (Tr. at 25.)

Regarding Claimant's mental condition, the ALJ noted that Claimant reported that her prescribed medications for psychiatric problems were helping. (Tr. at 25.) He noted that she was

27

able to care for her three-year old daughter and that she reported no concentration problems. (Tr. at 25.) He noted that Ms. Bell reported that Claimant interacted within normal limits. (Tr. at 25, 235.) The ALJ concluded that based upon inconsistencies in the record and the "unimpressive medical findings," Claimant was not entirely credible. (Tr. at 25.)

Based upon a review of the record, the ALJ's determination was proper and supported by substantial evidence.  Claimant fails to show, using the evidence of record, how her subjective complaints are consistent with the minimal medical findings and the opinions of several medical providers that she is capable of performing light work with additional limitations.  She argues that there are no inconsistencies, as stated by the ALJ, but fails to point to evidence in support of her position of total disability.  Notably, the ALJ went further than the state agency consultants and Dr. Bhirud by limiting Claimant to light work with a sit/stand option.  (Tr. at 26.)  The ALJ's RFC determination is bolstered by the opinions of two state agency physicians who reviewed the record and determined that Claimant was capable of performing light work, as well as the RFC determination of consultative examiner Dr. Bhirud. (Tr. at 154-61, 205-13, 244-45.)  Regarding the mental limitations, Ms. Bell expressed essentially normal findings during her 2002 evaluation (Tr. at 230-35) and Dr. Ashby noted in December 2001 that Claimant's panic symptoms were controlled on one dose of Wellbutrin per day. (Tr. at 229.)  Dr. Ashby further noted that Claimant had been on the verge of a panic attack, but was able to "talk herself out of it." (Tr. at 229.)

The ALJ considered the evidence of record in light of the applicable law and Regulations in determining that Claimant could perform light work with a sit/stand option and other limitations. As noted above, this determination is supported by substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District

Court confirm and accept the foregoing findings, **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings,  **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 25, 2005.

R. Clarke VanDervort
United States Magistrate Judge

29